IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

HECTOR ARELLANO,                                Civ. No. 2:20-cv-00371-SU

        Plaintiff,                              **OPINION & ORDER**

    v.

LAMB WESTON, INC.,

        Defendant.

_____

SULLIVAN, Magistrate Judge.

    Plaintiff Hector Arellano brings this personal injury action against Defendant Lamb Weston, Inc. The case was originally filed in Umatilla County Circuit Court and Lamb Weston removed the case to this Court on March 6, 2020. ECF No. 1. The parties have consented to magistrate jurisdiction in this case. ECF Nos. 8, 14. This matter comes before the Court on a motion to dismiss the First Amended Complaint ("FAC") filed by Lamb Weston. ECF Nos. 19, 20. The Court heard oral argument on February 17, 2021. For the reasons set forth below, the motion is DENIED.

**LEGAL STANDARD**

    To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks

Page 1 –OPINION & ORDER

for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court is not required to accept legal conclusions, unsupported by alleged facts, as true.[1] *Id.*

## BACKGROUND

Defendant Lamb Weston, Inc. is a food supply company incorporated in Delaware. FAC ¶ 1. ECF No. 19. Lamb Weston operates a warehouse in Hermiston, Oregon. *Id.* at ¶ 2. Plaintiff Hector Arellano is an employee of Americold Logistics, LLC ("Americold"), a Delaware limited liability company. *Id.* Americold operates a receiving room attached to the Lamb Weston warehouse in Hermiston. *Id.*

On January 17, 2018, Arellano was working in the Americold receiving room strapping racks to shipping pallets. FAC ¶ 2. The pallets in the receiving room were stacked high enough that workers on the ground were unable to see over them. *Id.* at ¶ 4. Arellano was wrapping a strap around one of the pallets and stepped between the pallet he was wrapping and a second pallet. *Id.* at ¶ 2. At the same time, Louis Torres, a forklift operator employed by Lamb Weston, used his forklift to shift the pallet behind Arellano. *Id.* Arellano was pinned between the two pallets and injured. *Id.* Arellano was able to call out and alert Torres, who reversed the forklift and released Arellano. *Id.*

## DISCUSSION

Arellano brings three claims against Lamb Weston alleging: (1) common law negligence (Claim 1); (2) general liability under the Oregon Employer Liability Law, ORS 654.305-654.336

---

[1] Arellano has offered the Declaration of J. Randolph Pickett and a copy of an incident report in support of his Response brief. ECF Nos. 22-1, 22-2. In its Reply brief, Lamb Weston moves to strike these materials. ECF No. 23. Lamb Weston's motion to strike is not properly before the Court. *See* LR 7-1(b) ("Motions may not be combined with any response, reply, or other pleading."); *but see* LR 56-1(b) (allowing evidentiary objections to be presented in a reply brief in motions brought under Rule 56). Nevertheless, Lamb Weston is correct that courts generally may not consider material outside the pleadings when resolving a motion under Rule 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The Court therefore declines to consider the Pickett Declaration or the incident report in resolving this motion.

(Claim 2); and (3) liability under the Oregon Employer Liability Law based on violation of safety codes (Claim 3).  Lamb Weston moved to dismiss all three claims for failure to state a claim.

I. **Negligence**

Arellano alleges that Lamb Weston was negligent because it knew or should have known that pinning and trapping are foreseeable risks to workers in areas where people are working on the ground and in forklifts and that this risk was especially acute when the pallet stacks are taller than the workers on the ground.  FAC ¶ 4.  Arellano alleges that Lamb Weston failed to implement policies, procedures, training, and instruction for its employees operating forklifts in the receiving room and that this failure was a substantial factor in Arellano's injury.  *Id.* at ¶¶ 4-5.

"[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."  *Fazzolari by and through Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17 (1987).  In general, "everyone owes each other the duty to act reasonably in light of foreseeable risks of harm."  *Towe v. Sacagawea, Inc.*, 357 Or. 74, 86 (2015).

In this case, the parties agree that no special relationship has been alleged between Arellano and Lamb Weston.  Lamb Weston asserts that the allegations of the FAC fail to establish that it had any control over the height of the pallet stacks in the Americold receiving room and that the limited visibility in the receiving room was the result of conduct and decision taken by either Americold or Arellano himself.  Although issues of comparative fault or contributory negligence may eventually be issues in this case, the allegations of the FAC do not attribute the poor visibility

in the receiving room to Lamb Weston. Rather, the FAC alleges that Lamb Weston failed to train or instruct its employees to operate forklifts safely in conditions of limited visibility.

In general, the FAC alleges that Lamb Weston's forklift operators were moving pallets in a crowded receiving room with obscured sightlines. The alleged failure to train or implement policies and procedures created a foreseeable risk of the sort of injury that befell Arellano. Accordingly, the Court concludes that Arellano has sufficiently pleaded a claim for negligence.

## II.     Employer Liability Law

Arellano raises two theories of liability under the Oregon Employer Liability Law ("ELL")—a theory of general liability and a theory of liability based on safety codes.

### A. General ELL Liability

The ELL was enacted to protect workers in hazardous occupations or dangerous lines of work and provides:

> Generally, all owners, contractors or subcontractors and other persons having charge of or responsibility for, any work involving a risk or danger to the employees or the public shall use every device, care and precaution that is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device without regard to the additional cost of suitable material or safety appliance and devices.

ORS 654.305.

Lamb Weston contends that the FAC does not allege an inherently dangerous activity or conditions that would subject Lamb Weston to the ELL with respect to Arellano.

As to the issue of inherent danger, courts have interpreted "work involving a risk or danger to . . . employees" under ORS 654.305 to include "both the worker's discrete task and the circumstances under which the worker performs that task." *Quirk v. Skanska USA Building, Inc.*, Case No. 3:16-cv-0352-AC, 2018 WL 2437537, at *7 (D. Or. May 30, 2018). "Ordinarily, the

question of whether a particular employment is inherently dangerous is for the jury to decide from the evidence in the case," and only in "clear cases," is a court authorized to decide as a matter of law that work does not involve risk and danger within the meaning of the ELL. *Snyder v. Seneca Lumber Co.*, 207 Or. 572, 577 (1956). In this case, the FAC alleges that the "work in which [Arellano] was engaged at the time of his injury involved working in close proximity to heavy equipment in the form a forklift, in a small and confined area without adequate visibility." FAC ¶ 13. The Court concludes that this is sufficient to establish the inherent dangerousness of the work at the pleading stage of the case.

Turning then to whether Lamb Weston may be liable under the ELL for Arellano's injuries, the parties agree that Lamb Weston is not Arellano's employer. But the ELL permits a plaintiff to recover from indirect employers such as owners, contractors, and subcontractors. ORS 654.305. To recover as an indirect employee, a plaintiff must prove that he was an adopted or intermingled employee of the defendant. *Miller v. Georgia-Pacific Corp.*, 294 Or. 750, 754 (1983) (en banc). An "adopted" employee is one who works on a project "of which defendant's operations are an integral part." *Thomas v. Foglio*, 225 Or. 540, 545 (1961). An indirect employee is "intermingled" when the "defendant's interlocking interests with the [plaintiff's] employer amounts to an intermingling of duties and responsibilities." *Myers v. Staub*, 201 Or. 663, 668 (1954) (internal quotation marks and citations omitted).

The ELL can serve as the basis of a claim against a non-employer when the defendant is "in charge of or [has] responsibility for work involving risk or danger in either (a) a situation where defendant and plaintiff's employer are simultaneously engaged in carrying out work on a common enterprise, or (b) a situation in which the defendant retains a right to control or actually exercises

control as to the manner or method in which the risk-producing activity is performed." *Miller*, 294 Or. at 754.

Arellano contends that Lamb Weston and Americold were engaged in a common enterprise in the operation of the receiving room. The "common enterprise" test allows the ELL to be "invoked against a third-party employer when the third-party employer defendant and the plaintiff's employer participated in a common enterprise involving an intermingling of duties and responsibility of the employees of both employers." *Sacher v. Bohemia, Inc.*, 302 Or. 477, 485-86 (1987) (en banc) (internal quotation marks and citations omitted). However, this "participation must be more than a common interest in an economic benefit which might accrue from the accomplishment of the enterprise." *Id.* In this case, the FAC alleges that Americold's receiving room adjoins the Lamb Weston warehouse and that the receiving room is simultaneously used by employees of both companies for movement of shipping pallets. Although the contours of the relationship between Americold and Lamb Weston might have been more fully alleged, the allegations of the FAC are sufficient to establish a common enterprise for purposes of a motion to dismiss.

Even if the Court did not conclude that Lamb Weston and Americold were in a common enterprise, Lamb Weston might still be liable under the ELL if it retained the right to control, or actually controlled, the manner or method the risk producing activity was performed. *Woodbury v. CH2M Hill, Inc.*, 335 Or. 154, 160 (2003); *Groeneweg v. JELD-WEN, Inc.*, Case No. 6:20-cv-01030-AA, 2020 WL 7265366, at *6 (D. Or. Dec. 10, 2020).

In this case, Lamb Weston contends that it does not have control or retain control over the operation of Americold's receiving room or, more specifically, over the work Arellano did there. However, "control or charge over the particular employee injured is not required to invoke the

ELA [also known as ELL], but control or charge over the activity or instrumentality that causes the injury is." *Sacher*, 302 Or. at 486 (footnote omitted). Here, the FAC alleges that Lamb Weston had control over its forklift operators in the receiving room and it was that aspect of the joint Americold-Lamb Weston operation that is alleged to have caused Arellano's injury. The Court therefore concludes that Arellano has sufficiently pleaded a claim under the ELL and Lamb Weston's Motion to Dismiss Claim 2 is DENIED.

### B. Liability Based on Safety Codes

Arellano contends that Lamb Weston is also liable under the ELL for failure to comply with safety codes. ORS 654.310 provides:

> All owners, contractors, subcontractors, or persons whatsoever, engaged in the construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure, or in the erection or operation of any machinery, or in the manufacture, transmission and use of electricity, or in the manufacture or use of any dangerous appliance or substance, shall see that all places of employment are in compliance with every applicable order, decision, direction, standard, rule or regulation made or prescribed by the Department of Consumer and Business Services pursuant to ORS 654.001 to 654.295, 654.412 to 654.423 and 654.750 to 654.780.

ORS 654.310.

Specifically, Arellano contends that that Lamb Weston failed to comply with state and federal regulations mandating that forklift operators be trained in, among other things, the safe operation of forklifts when visibility is impaired during loading, 29 C.F.R. § 1910.178(l)(3)(i)(F) or when there is pedestrian traffic in the areas where the forklift is operated, 29 C.F.R. § 1910.178(l)(3)(ii)(D).[2]  FAC ¶ 21.

---

[2] The C.F.R. subsections cited here are quoted in the FAC but not cited or clearly identified in the pleadings or in Arellano's briefing. FAC ¶ 21. The FAC also appears to quote (but does not cite or clearly identify) OAR 437-002-0221, but the quotation to the OAR is merged with the quotation from 29 C.F.R. § 1910.178(l)(3)(i)(F).

Lamb Weston moves to dismiss on the basis that it is not subject to ORS 654.310 because it is not "engaged in the construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure." However, ORS 654.310 also applies to entities engaged in the "operation of any machinery," which would encompass the operation of forklifts. Lamb Weston's Motion to Dismiss Claim 3 is therefore DENIED.

## CONCLUSION

Defendant Lamb Weston's Motion to Dismiss is DENIED.

It is so ORDERED and DATED this 19th day of February 2021.

>    /s/ Patricia Sullivan
>    Patricia Sullivan
>    United States Magistrate Judge